**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Respondent,

v.

Dazzelle Demarcus Smith, Appellant.

Appellate Case No. 2018-000952

———————

Appeal From Greenwood County
Frank R. Addy, Jr., Circuit Court Judge

———————

Unpublished Opinion No. 2022-UP-031
Heard November 2, 2021 – Filed January 26, 2022

———————

**AFFIRMED**

———————

William G. Yarborough, III, and Lauren Carole Hobbis, both of William G. Yarborough III, Attorney at Law, LLC, of Greenville, for Appellant.

Attorney General Alan McCrory Wilson and Senior Assistant Attorney General David A. Spencer, both of Columbia, and Solicitor David Matthew Stumbo, of Greenwood, for Respondent.

———————

**PER CURIAM:** In this action, Dazzelle Demarcus Smith (Appellant) appeals his drug convictions, arguing that the circuit court erred in (1) denying his motion for a

mistrial based on a witness mentioning Smith's previous arrests; (2) allowing a law enforcement officer to testify about the value of certain drugs; (3) denying Smith's motion to suppress certain drugs found in a vehicle that he allegedly drove; and (4) denying a motion for a new trial based on a juror's answers at voir dire.

On a November night in 2016, three Greenwood City police officers approached an illegally parked car.  As they approached the car, the odor of marijuana grew increasingly pungent.  Seated in the driver's seat was Appellant.

The three officers essentially surrounded the car.  Looking across the car with his flashlight, Officer Martin Harrelson saw a small baggie of marijuana in the door handle.  The officers then apprehended Appellant and searched the car.  Inside, they found additional marijuana, crack cocaine, and powder cocaine.

Appellant was indicted on possession of marijuana with intent to distribute, possession with intent to distribute crack cocaine, and cocaine trafficking.  After two mistrials, a third trial was held on April 9–10, 2018.  Patricia Raiford (Juror) was impaneled as a juror after neither side objected to her service.

The State's first witness was Arleen Smith (Arleen).  Arleen, Appellant's aunt, was the registered owner of the car that was searched.  However, she insisted that Appellant used the car and essentially lived out of the vehicle.  On cross-examination, as Appellant's counsel tried to emphasize her relationship to the vehicle, Arleen said: "He['s] been arrested on Tanyard three times."  Appellant immediately moved for a mistrial.  The court denied Appellant's motion for a mistrial.  However, the court gave the jury a curative instruction.

During the trial, the officers largely repeated their testimony from a suppression hearing held before one of the mistrials.  The State additionally called Detective Whitfield Brooks of the Greenwood County Sheriff's Office narcotics division.  When the State attempted to qualify Detective Brooks "as an expert in illicit narcotic sales," Appellant objected.  The court ruled that it would not allow Detective Brooks to testify as an expert, but would allow him to rely on "his own personal experience in his involvement with other cases [in testifying as to] what the value of drugs are . . . ."  Appellant did not object to any of the testimony then offered by Detective Brooks about the value of the drugs found in the vehicle with Appellant.

Appellant was convicted on all charges and sentenced to concurrent terms of twenty-five, ten, and twenty years.  Three days after the trial, counsel for Appellant filed a motion for a new trial after discovering that Juror knew Appellant and Arleen.

The court held a hearing. At the conclusion of the hearing, the court denied the motion for a new trial. This appeal followed.

1.      As to Appellant's first ground for appeal, we find the circuit court did not abuse its discretion by declining to grant a mistrial in this case, and the court's curative instruction was strong. *See State v. Crim*, 327 S.C. 254, 257, 489 S.E.2d 478, 479–80 (1997) ("The power of the court to declare a mistrial ought to be used with the greatest caution and for plain and obvious causes stated into the record by the judge. A mistrial should not be ordered in every case where incompetent evidence is received and later stricken out." (citation omitted)); *id.* at 257, 489 S.E.2d at 480 ("An instruction to disregard objectionable evidence usually is deemed to have cured the error in its admission unless on the facts of the particular case[,] it is probable that notwithstanding such instruction[,] the accused was prejudiced."); *State v. Wasson*, 299 S.C. 508, 511, 386 S.E.2d 255, 256 (1989) ("The determination of what curative measures are appropriate in a given case rests in the sound discretion of the [circuit court]. [It] should *exhaust other methods to cure the prejudice* before aborting a trial." (emphasis added) (quoting *State v. Stone*, 290 S.C. 380, 382, 350 S.E.2d 517, 518 (1986))); *State v. Howard*, 296 S.C. 481, 483, 374 S.E.2d 284, 285 (1988) ("Among the factors to be considered in ordering a mistrial are the character of the testimony, the circumstances under which it was offered, the nature of the case, and the other testimony in the case.").

Taking into account the factors laid out in *Howard*, we note that the testimony was fleeting in nature; the testimony was offered during a heated back-and-forth between the witness and Appellant's counsel, who was essentially attempting to pin the drugs on the witness; and the other evidence offered to prove Appellant's guilt was substantial.

2.      As to the issue regarding the lay opinion testimony of drug values, we find this argument was not preserved for our review.

At trial, the State moved to have Detective Whitfield Brooks qualified "as an expert in illicit narcotics sales." Appellant immediately objected. The court responded: "I think that's a matter of common experience based upon his background in this area. So I don't know that he needs to be qualified as an expert." The State assented, and Appellant said: "Thank you, Your Honor." Appellant raised no further objections to Detective Brooks's testimony.

Once the court decided that Brooks could testify "based upon his background in this area," Appellant could only preserve this issue for review by contemporaneously objecting to the testimony Brooks provided as a lay witness and

receiving a ruling from the circuit court on that ground. *See I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 421–22, 526 S.E.2d 716, 724 (2000) ("An appellate court may not, of course, *reverse* for any reason appearing in the record. The losing party must first try to convince the lower court it . . . has ruled wrongly and then, if that effort fails, convince the appellate court that the lower court erred.").

3.      As to the motion to suppress, the seizure of the marijuana baggie found in the door is clearly covered by the "plain view" exception. *See State v. Brown*, 289 S.C. 581, 588, 347 S.E.2d 882, 886 (1986) ("Under th[e plain view] exception, objects falling within the plain view of a law enforcement officer who is rightfully in position to view these objects are subject to seizure and may be introduced in evidence."); *State v. Dobbins*, 420 S.C. 583, 595, 803 S.E.2d 876, 882 (Ct. App. 2017) ("The two elements needed to satisfy the plain view exception are (1) the initial intrusion that afforded the authorities the plain view was lawful and (2) the incriminating nature of the evidence was immediately apparent to the seizing authorities." (quoting *State v. Wright*, 416 S.C. 353, 368, 785 S.E.2d 479, 487 (Ct. App. 2016))); *State v. Nelson*, 336 S.C. 186, 193, 519 S.E.2d 786, 789 (1999) ("As a general matter, the decision to stop an automobile is reasonable where police have probable cause to believe that a traffic violation has occurred.").

Here, the initial intrusion was lawful; the officers saw a car illegally parked, and as they approached, two of them smelled marijuana. Either of these reasons alone might have provided probable cause to approach and "stop" the vehicle; both of them together unquestionably provided the needed justification. Further, if the plain view exception is applicable, there is no initial violation of the Fourth Amendment, and Appellant's argument about the later-discovered drugs being "fruit of the poisonous tree" is unwarranted.

4.      As to Appellant's request for a new trial based on Juror's failure to disclose her knowledge of Appellant and members of his family, we find no error. *See State v. Tucker*, 423 S.C. 403, 411, 815 S.E.2d 467, 471 (Ct. App. 2018) ("A new trial is warranted when: (1) the juror intentionally concealed information, and (2) the information withheld would have triggered a challenge for cause or been material to a party's choice to use a preemptory challenge." (citing *State v. Woods*, 345 S.C. 583, 587, 550 S.E.2d 282, 284 (2001))); *id.* ("[I]ntentional concealment occurs when the question presented to the jury on voir dire is reasonably comprehensible to the average juror and the subject of the inquiry is of such significance that the juror's failure to respond is unreasonable." (alteration in original) (quoting *State v. Galbreath*, 359 S.C. 398, 404 n.2, 597 S.E.2d 845, 848 n.2 (Ct. App. 2004))); *Lynch v. Carolina Self Storage Ctrs., Inc.*, 409 S.C. 146, 155, 760 S.E.2d 111, 116 (Ct. App. 2014) ("[U]nintentional concealment occurs 'where the question posed is

ambiguous or incomprehensible to the average juror, or where the subject of the inquiry is insignificant or so far removed in time that the juror's failure to respond is reasonable under the circumstances.'" (quoting *Woods*, 345 S.C. at 588, 550 S.E.2d at 284)); *Tucker*, 423 S.C. at 411, 815 S.E.2d at 471 ("A party alleging innocent or unintentional nondisclosure 'has a heightened burden to show that the concealed information indicates the juror is potentially biased, and that the concealed information would have been a material factor in the party's exercise of its peremptory challenges.'" (quoting *State v. Coaxum*, 410 S.C. 320, 329, 764 S.E.2d 242, 246 (2014))).

In this case, Juror did not conceal anything that was sought to be uncovered by the voir dire questions. The question that Appellant alleges Juror should have answered differently was: "Is there any member of the jury panel related by blood or marriage to any of th[e] possible witnesses or anyone who has any close business or social relationship with th[e] witnesses?" Based on the record, Juror's knowledge of Appellant and previous familiarity with Arleen was not of the type that the court intended to be included in the question. *See State v. Guillebeaux*, 362 S.C. 270, 275, 607 S.E.2d 99, 102 (Ct. App. 2004) ("Juror was not asked during voir dire if she knew any of the witnesses, she was asked if she had any type of social relationship with [one of the witnesses]. Juror's knowledge of who [the witness] was and the rare exchange of greetings with him in her community did not constitute a 'social relationship.'"); *cf. Lynch*, 409 S.C. at 156, 760 S.E.2d at 117 ("The definition of 'relationship' denotes a 'connection' between people. *See Webster's New World College Dictionary* 1209 (4th ed.2008) (defining 'relationship" as 'the quality or state of being related; connection' and 'a continuing attachment or association between persons, firms, etc.'); *The American College Dictionary* 1022 (1969) (defining 'relationship' as 'connection; a particular connection').").  Further, if the question was truly read as broadly as Appellant contends, such a reading would render it ambiguous to the average juror.  Therefore, at most, the concealment here is unintentional and, despite Appellant's arguments, there is no indication in the record that Juror was biased against Appellant.

**AFFIRMED.**

**THOMAS and GEATHERS, JJ., and HUFF, A.J., concur.**